IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| RODRICUS DARNELL SCOTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 624-061 |
| | ) | |
| JOSHUA JONES, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner brings the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the Court is Petitioner's motion to strike and for sanctions, as well as Respondent's motion to dismiss the petition for lack of exhaustion. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's motion be **DENIED**, (doc. nos. 20-1, 20-2), Respondent's motion to dismiss be **GRANTED**, (doc. no. 14), this case be **DISMISSED** without prejudice, and this civil action be **CLOSED**.

I.   **BACKGROUND**

A Bulloch County grand jury indicted Petitioner on November 3, 2020, with one count each of malice murder, felony murder predicated on aggravated assault, aggravated assault, cruelty to children in the first degree, and possession of a firearm by a convicted felon. (Doc. no. 15-1.) After a jury trial in August of 2022, in which Petitioner proceeded *pro se*, he was found not guilty on the malice murder and firearm charges and guilty on the remaining three charges. (Doc. no. 15-2.) At sentencing on August 31, 2022, the aggravated assault count

merged with the felony murder, and Petitioner was sentenced to life without parole, with a consecutive sentence of twenty years for the cruelty to children conviction. (Id.) Petitioner filed a Notice of Intent to File Motion for New Trial, as well as a Moton for New Trial, on September 28, 2022. (Doc. nos. 15-3, 15-4.)

Both before and after the new trial filings, Petitioner also filed several notices of appeal to the Georgia Court of Appeals, dated September 8, 2022, April 27, 2023, May 3, 2023, and May 4, 2023. (Doc. nos. 15-5, 15-6, 15-7, 15-8.) The Court of Appeals transferred the appeal to the Supreme Court of Georgia because the Court of Appeals did not have jurisdiction over Petitioner's case involving a murder conviction. (Doc. no. 15-9.) On February 20, 2024, the Georgia Supreme Court dismissed the appeal, case number S24A0527, because it found Petitioner had timely filed a motion for new trial that was still pending in Bulloch County Superior Court. (Doc. no. 15-10.) The Supreme Court explained the notice of appeal would ripen once an order was entered disposing of the motion for new trial, unless the motion was granted. (Id.) Petitioner filed a motion for reconsideration of the dismissal, arguing the typed motion for new trial was fraudulently filed without his knowledge, (doc. no. 15-11), but the Supreme Court denied that motion, explaining the notice of appeal would ripen upon entry of an order withdrawing the motion for new trial or upon entry of an order disposing of the motion for new trial, unless the motion was granted, (doc. no. 15-12).

On March 13, 2024, the trial court issued an order recounting Petitioner's history of filings, the Georgia Supreme Court's dismissal of Petitioner's direct appeal because of the pending new trial motion, and an April 19, 2023 hearing in which Petitioner disavowed filing the motion for new trial and adamantly expressed his desire to proceed with his direct appeal. (Doc. no. 15-13.) Thus, the trial court dismissed the motion for new trial. (Id.) The publicly

available docket shows that no action was taken from March 13, 2024 until January 16, 2025, when the Clerk of Court for Bulloch County began processing the direct appeal, and after several attempts at printing and sending the necessary paperwork for Petitioner's direct appeal, on February 7, 2025, the Court of Appeals of Georgia issued a Notice of Docketing for the direct appeal, case number A25A1150. See Bulloch Cnty. Sup. Ct. Web Docket, available at https://peachcourt.com/ (use "Case Search" by "Search by Party Name" in Bulloch Cnty. Sup. Ct. for "Scott, Rodricus"; then search for "SUCR2020000288"; select Filings tab; last visited Mar. 5, 2025), attached hereto at Ex. A; see also United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (noting court may take judicial notice of another court's records to establish existence of ongoing litigation and related filings). Consistent with the prior procedural history of the case described above, it appears the Court of Appeals will end up transferring the case to the Georgia Supreme Court because the Court of Appeals does not have jurisdiction over Petitioner's case involving a murder conviction. (Cf. doc. no. 15-9.) Thus, unsurprisingly, on February 5, 2025, the Supreme Court of Georgia issued a letter regarding Petitioner's *prior* appeal, S24A0527, explaining it no longer had jurisdiction over that 2024 case. (Doc. no. 25, p. 2.)

While the direct appeal worked its way through the state courts, Petitioner also sought state collateral relief concerning the August 2022 convictions by filing a state habeas corpus petition on August 7, 2023, in the Superior Court of Chattooga County. (Doc. no. 15-15.) Respondent sought to dismiss that petition as premature because Petitioner's direct appeal was pending. (See doc. no. 15-16; Chattooga Cnty. Sup. Ct. Web Docket, available at https://peachcourt.com/ (use "Case Search" by "Search by Party Name" in Chattooga Cnty. Sup. Ct. for "Scott, Rodricus"; then search for "2023CA45133"; select Filings tab; doc. nos.

3

9, 10, last visited Mar. 5, 2025). Petitioner's opposition to the motion to dismiss was based on allegations the Bulloch County Clerk of Court had refused to transmit the record for the direct appeal, but the state habeas petition was dismissed without prejudice and as premature on December 18, 2023, because Petitioner had a direct appeal pending in the Georgia Court of Appeals, case number A24A0671 (Ga. Ct. App. Dec. 4, 2023).[1] (See doc. no. 15-17; 2023CA45133, doc. no. 11.) Petitioner applied to the Georgia Supreme Court for a certificate of probable cause to appeal ("CPC") the denial of state habeas relief, but the Supreme Court denied the CPC and issued the remittitur on September 19, 2024. (Doc. no. 15-19.)

Approximately one week after the issuance of the remittitur, on September 27, 2024, Petitioner signed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising four grounds for relief, and the Clerk of Court in the Northern District of Georgia received and filed it on October 21, 2024. (Doc. no. 1.) Upon transfer to the Southern District of Georgia and subsequent payment of the filing fee, on November 19, 2024, the Court ordered Respondent "to answer in writing the allegations of the petition within sixty days" and provide certain documents required by Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. (Doc. no. 8, pp. 1-2.) That same order also directed Respondent to move for dismissal or explain in writing why the petition cannot be adjudicated by a motion to dismiss, and on January 13, 2025, Respondent filed the dispositive motion now before the Court, seeking dismissal of the petition for failure to exhaust state remedies. (Doc. no. 14.)

---

[1] This is the direct appeal which, as described above, was transferred to the Georgia Supreme Court and assigned case number S24A0527 because the Court of Appeals did not have jurisdiction over Petitioner's case involving a murder conviction. (See doc. nos. 15-9, 15-10.)

After addressing a non-sensical filing regarding Respondent's alleged failure to respond to the federal petition and a request to compel documentation unrelated to the pending motion to dismiss, on February 3, 2025, the Court provided Petitioner an extension of time until February 19, 2025, to file his opposition to the motion to dismiss. (See doc. no. 19.) In a motion dated February 3, 2025 but not received by the Clerk of Court until February 6, 2025, Petitioner filed a "Motion to Strike Fabricated Evidence and for Sanctions," in which Petitioner challenges certain documents filed in state court and legal conclusions drawn therefrom and purports to appoint the undersigned as a "Fiduciary/Trustee to act for the benefit of" Petitioner. (Doc. no. 20, p. 31.) Petitioner asks the Court to strike Respondent's answer and motion to dismiss, as well as certain of these state court documents from the record – some of which have nothing to do with the issue of exhaustion – and for the Court to award him monetary damages for the submission of state court records which he believes to be fraudulent. (See generally id.)

## II.   DISCUSSION

### A.   Motion to Strike and for Sanctions

Before moving to the merits of the motion to dismiss, the Court addresses Petitioner's concerns regarding the record evidence. Petitioner's "Motion to Strike Fabricated Evidence and for Sanctions" asks the Court to strike certain state court documents from the record, as well as Respondent's answer and motion to dismiss, and for the Court to award him monetary damages for the submission of state court records which he believes to be fraudulent. (Doc. no. 20.) As summarized in Respondent's opposition:

> Petitioner accuses Respondent of presenting fabricated evidence from his criminal case and ask[s] for sanctions. In this motion, it appears that Petitioner is primarily taking issue with the contents of the documents.

5

> Petitioner asks for maximum sanctions to be ordered for presenting "false evidence" with the intent to "impede" a federal investigation or court proceeding.

(Doc. no. 24, p. 2 (citations and footnote omitted).)  Indeed, Petitioner's accusations are consistent with the theme of his declarations and motions that he does not have a pending direct appeal, and the state courts have hindered his post-conviction efforts to cover-up mistakes in his prosecution.  Stated otherwise, Petitioner contests the legal conclusions drawn from filings made in his underlying criminal proceedings, and any outcome that is not consistent with his views is characterized as "fabricated" or "false."  Thus, Petitioner argues, he is entitled to a ruling in his favor by default.  His argument fails for multiple reasons.

First, as the Court has previously explained, default judgments are not contemplated in habeas corpus cases.  See Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987).  Second, and most importantly, Petitioner has not shown Respondent presented any fabricated or false evidence.  Petitioner's belief that documents not created by him were filed in his case is well-documented in the very filings submitted by Respondent.  (See, e.g., doc. no. 15-11 (asking Supreme Court to reconsider appeal dismissal because motion for new trial was filed without Petitioner's knowledge); doc. no. 15-13 (explaining video hearing held to explore circumstances of disavowed motion for new trial).)  Moreover, as cited above and as demonstrated by Exhibit A attached to this Report and Recommendation, many of the documents submitted by Respondent are publicly available court records, of which the Court is authorized to take judicial notice for the purpose of "recognizing the 'judicial act' that the order represents or the subject matter of the litigation."  See Jones, 29 F.3d at 1553.  Petitioner's disagreement with the state court findings or rulings does not make the presentation of those court documents fabricated or false, and as described below, he has

6

several available avenues in the state courts to seek remedies for the alleged errors in his underlying criminal prosecution.

Additionally, Petitioner's representative examples of false statements and/or fabrication are demonstrably false themselves. For example, Petitioner claims Respondent has falsely claimed Petitioner has an appeal pending in the Georgia Supreme Court and submits a letter dated February 5, 2025, from the Supreme Court stating a *prior* appeal, S24A0527, was dismissed. (Doc. no. 25, p. 2; doc. no. 26, p. 2.) Examination of Respondent's briefing, however, shows Respondent has actually argued, "Petitioner's direct appeal is thus currently *pending re-docketing* in the Georgia Supreme Court as of the date of filing this brief." (Doc. no. 14-1, p. 3 (emphasis added).) As the chronology set forth in detail above demonstrates, Petitioner's direct appeal did not ripen until the trial court disposed of the motion for new trial, and despite some months of delay in transmitting the appeal record, there is currently a direct appeal pending in Petitioner's name in the Georgia Court of Appeals as of February 7, 2025, A25A1150. (See Ex. A hereto.) In keeping with the jurisdictional authority of the Georgia appellate courts and prior rulings in the direct appeal process chronicled in Part I, that appeal is expected to be transferred to the Georgia Supreme Court, (see doc. no. 15-9), *i.e.*, re-docketed, but regardless of where the appeal lands, there is a direct appeal pending.

In sum, Respondent has not presented false or fabricated evidence warranting the imposition of sanctions in any form, and the "Motion to Strike Fabricated Evidence and for Sanctions" should be **DENIED**. (Doc. nos. 20-1, 20-2.)

B.  **The Exhaustion Requirement**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214, and in accordance with the traditional exhaustion requirement, an application for a writ of habeas

7

corpus shall not be granted unless it appears that the petitioner has exhausted the remedies available to him by any state court procedure. See 28 U.S.C. §§ 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003). The exhaustion requirement applies with equal force to all constitutional claims. See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1353-54 (11th Cir. 2012); see also Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992). "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted).

Moreover, giving the state courts an opportunity to act on a petitioner's claims includes allowing the state courts to complete the appellate review process. As the Supreme Court explained:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state

8

> courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan, 526 U.S. at 845. This "one full opportunity" includes pursuing discretionary review with the highest available appellate court where the highest court of the state has not opted out of this requirement. Id. at 847-48. Lastly, as a general proposition, "when a petitioner has failed to exhaust state remedies, the district court should dismiss the petition without prejudice to allow exhaustion." Reedman v. Thomas, 305 F. App'x 544, 546 (11th Cir. 2008) (*per curiam*) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)).

### C. Petitioner Failed to Exhaust State Remedies

As Petitioner's direct appeal is pending, and as his prior state habeas corpus petition was dismissed without prejudice as premature, Petitioner has not demonstrated the requisite exhaustion of his available state remedies. See 28 U.S.C. § 2254(b), (c). As the United States Supreme Court admonished, "[T]he state prisoner must give the state courts an opportunity to act on his claims *before* he presents those claims to a federal court in a habeas petition." O'Sullivan, 526 U.S. at 842 (emphasis added). Petitioner has multiple avenues of relief in the Georgia state courts which have yet to be exhausted.

It is improper to attempt to circumvent the state courts in favor of moving directly to the federal courts. Only in rare circumstances may a federal habeas court deviate from the exhaustion requirement, such as in cases where the delay in the state courts is unreasonable or otherwise unjustified. Generally, as a matter of comity, the state courts must be afforded a fair opportunity to hear claims raised in a habeas corpus petition challenging custody resulting from a state court judgment. Picard v. Connor, 404 U.S. 270, 275 (1971). However, "[c]omity does not require that the federal courts decline to exercise jurisdiction in the face of allegations

that the state courts have been presented with the merits of a claim for habeas corpus relief and have, for one reason or another, refused or been unable to act upon the claim." St. Jules v. Beto, 462 F.2d 1365, 1366 (5th Cir. 1972). [2]

In this regard, "[a] federal habeas petitioner need not wait until his state petitions for relief are exhausted, if the state court has unreasonably or without explanation failed to address petitions for relief." Hollis v. Davis, 941 F.2d 1471, 1475 (11th Cir. 1991); see also Reynolds v. Wainwright, 460 F.2d 1026, 1027 (5th Cir. 1972) (ruling that an inordinate delay can, under certain circumstances, excuse exhaustion). However, the Court must be mindful that "state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Indeed, the exhaustion requirement ensures "that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." Id.

Here, there is no indication of unreasonable delay or a refusal to address a claim such that this Court should disregard the exhaustion requirement. While the process in the state courts may be taking longer than Petitioner prefers, as the chronology described in detail in Part I, *supra*, demonstrates, Petitioner was convicted in Bulloch County Superior less than three years ago in August 2022. (Doc. no. 15-2.) Simultaneous pursuits of a new trial and a direct appeal delayed Petitioner's post-conviction proceedings, but the record for his direct appeal has now been transmitted to the Georgia Court of Appeals, A25A1150, (Ex. A hereto), subject to

---

[2] Under Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

resolution there or in the Georgia Supreme Court, (see doc. no. 15-9).  This delay alone does not bring Petitioner's case within the futility exception of § 2254, as the Eleventh Circuit has required exhaustion even under the circumstances of an eight-year delay in the state courts.  See Hughes v. Stafford, 780 F.2d 1580, 1581-82 (11th Cir. 1986) (*per curiam*); see also Young v. White, Civ. Act. No. 420-210, 2021 WL 8156028, at *1 & n.2 (S.D. Ga. Aug. 31, 2021) (determining passage of five years without ruling on state habeas petition insufficient to satisfy futility exception to exhaustion requirement), *adopted by* 2022 WL 1215638 (S.D. Ga. Apr. 25, 2022).  In sum, the less than three-year -period in which Petitioner's post-conviction proceedings have been working their way through the state courts is not so extreme as to warrant excusing the exhaustion requirement.  Moreover, allowing Petitioner to simultaneously pursue relief in both state court and federal court would clearly violate the principles of comity.[3]  See Horowitz v. Wainwright, 709 F.2d 1403, 1404 (11th Cir. 1983) (*per curiam*) (dismissing § 2254 petition without prejudice where appeal regarding the same claim ongoing in a Florida state court).

To the extent Petitioner opposes the motion to dismiss on the grounds of alleged irregularities with the manner in which the state court proceedings have been conducted, suggesting the courts are attempting to coverup errors in his prosecution, his arguments misses the mark.  First, as the Eleventh Circuit has explained, "[W]hile habeas relief is available to

---

[3]Nor is a stay of this case warranted because even if Petitioner had filed a mixed petition with exhausted and unexhausted claim – which it does not appear he has because none of his post-conviction claims have been considered in the state courts – Petitioner has not made any showing, let alone a showing of good cause, for failing to exhaust his claims in state court.  See Rhines v. Weber, 544 U.S. 269, 277-78 (2005); see also Thompson v. Sec'y for Dep't of Corr., 425 F.3d 1364, 1365-66 (11th Cir. 2005) (summarizing requirements of Rhines as follows: "A district court should grant a stay and abeyance if (1) the petitioner had 'good cause' for failing to exhaust the claims in state court; (2) the unexhausted claims are 'potentially meritorious;' and (3) 'there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.'" (citation omitted)).

address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004). Second, Petitioner offers no factual support for his conclusory allegations that the state courts will not rule fairly on his petition in order to coverup their prior missteps. Rather, he simply disagrees with any legal ruling that does not result in his exoneration. Stated otherwise, Petitioner has simply decided for himself, without ever giving the state appellate or habeas courts a chance to rule on his claims, let alone providing substantiated evidentiary proof, that his rights will not be analyzed in accordance with the law. Thus, the manner in which the state proceedings have been conducted to date do not excuse Petitioner from exhausting his claims in the state courts.

In sum, Petitioner has not given the state courts "an opportunity to act on his claims *before* he presents those claims to a federal court in a habeas petition." O'Sullivan, 526 U.S. at 842 (emphasis added). The Court finds nothing in the record justifying deviation from the exhaustion requirement. Petitioner may not simply skip over the state courts in favor of moving directly to federal court. Accordingly, the motion to dismiss for lack of exhaustion should be granted.[4]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Petitioner's motion to strike and for sanctions be **DENIED**, (doc. nos. 20-1, 20-2),

---

[4]Because the petition should be dismissed for failure to exhaust the remedies available to Petitioner by any state court procedure, and because the recommendation is for dismissal without prejudice, the Court need not reach Respondent's undeveloped, alternative argument that certain grounds of the petition should be dismissed for failure to state a claim for federal habeas corpus relief. (See doc. no. 14-1, p.4 n.4.)

Respondent's motion to dismiss be **GRANTED**, (doc. no. 14), this case be **DISMISSED** without prejudice, an appropriate judgment of dismissal be **ENTERED**, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 5th day of March, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA